No. 14-3678

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

OHIO COUNCIL 8 AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al*.,

Appellants,

v.

SECRETARY OF STATE, *et al*.,

Appellees.

_____

On Appeal From The United States District Court
For The Southern District Of Ohio (Western Division)

_____

**BRIEF FOR APPELLANTS**

_____

Alphonse A. Gerhardstein
Jennifer L. Branch
Gerhardstein & Branch
432 Walnut Street
Suite 400
Cincinnati, Ohio 45202
(513) 621-9100
agerhardstein@gbfirm.com

Stephen L. Braga
(Counsel of Record)
David Martin (Third Year Law Student)
Cory Ward (Third Year Law Student)
Jack Zugay (Third Year Law Student)
UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road, SL-251
Charlottesville, VA 22903-1789
(434) 924-3825
stevebraga@virginia.edu

*Counsel for Appellants*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Appellants offer the following disclosures:

Appellants Ohio Council 8 American Federation of State, County, and Municipal Employees, AFL-CIO; Honorable Nadine Allen; Honorable Peter J. Corrigan; Martha Good; and the Ohio Democratic Party are not subsidiaries or affiliates of a publicly owned corporation.

No publicly traded corporation has a financial interest in the outcome of this appeal.

/s/ Stephen L. Braga
Attorney for Appellants

Date: October 14, 2014

ii

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ...................................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................ 2

I.    JURISDICTIONAL STATEMENT .......................................... 3

II.   STATEMENT OF ISSUES FOR REVIEW ................................ 3

III.  STATEMENT OF THE CASE .................................................. 4

IV.   STATEMENT OF THE FACTS ................................................ 5

V.    SUMMARY OF ARGUMENT .................................................. 9

VI.   ARGUMENT ............................................................................ 11

  A.  To Justify a Constitutional Burden, a State's Asserted Interest Must be Sufficiently Furthered ................................................................. 12

  B.  Requiring Nonpartisan Ballots in the General Election Does Not Actually Further Ohio's Asserted Interest. .................................... 15

    1.  Actual Impartiality: O.R.C. § 3505.04 Does Not Advance Ohio's Interest in Electing Actually Impartial Judges ..................... 16

    2.  Apparent Impartiality: O.R.C. § 3505.04 Does Not Advance Ohio's Interest in Electing Apparently Impartial Judges. ............. 19

  C.  The District Court Failed to Properly Balance the Appellants' First Amendment Burdens Against the Alleged State Interest Supporting O.R.C. § 3505.04. ........................................................ 23

    1.  The Democratic Party is Significantly Burdened. ................. 24

    2.  Ohio Voters are Significantly Burdened. ............................... 29

    3.  The Judicial Candidates are Significantly Burdened. ........... 32

    4.  The District Court Erred When it Held that Ohio's Asserted Interest Outweighed the Burdens Placed on Appellants. ............ 34

VII.  CONCLUSION ...................................................................... 35

CERTIFICATE OF COMPLIANCE ................................................. 38

CERTIFICATE OF SERVICE ........................................................... 39

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............. 40

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). .................................................passim

*Buckley v. Valeo*, 424 U.S. 1 (1976). .......................................................................26

*Burdick v. Takushi*, 504 U.S. 428 (1992).............................................. 12, 13, 14, 35

*California Democratic Party v. Jones*, 530 U.S. 567 (2000). ...............................25

*Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010). .................................... 16, 17, 32

*Cousins v. Wigoda*, 419 U.S. 477 (1975)................................................................26

*Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107
(1981). ..................................................................................................................26

*Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989).
...................................................................................... ……25, 26, 30

*Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979)....25

*Kusper v. Pontikes*, 414 U.S. 51 (1973)..................................................................32

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2008). .................32

*Nader v. Schaffer*, 417 F.Supp. 837 (D.C. Conn. 1976). ........................................26

*Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO v.
Brunner*, No. 10-4006 (6th Cir. filed Aug. 20, 2010) (Order Denying Motion for
Injunction). ...........................................................................................................4

*Republican Party of Minn. v. White (White I)*, 536 U.S. 765 (2002)..........20, 21, 32

*Rosario v. Rockefeller*, 410 U.S. 752 (1973). .......................................................... 25

*Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992). ................................................ passim

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986). ......................... 25, 29

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997). ........................... 25

*Williams v. Rhodes*, 393 U.S. 23 (1968). ........................................................... 30, 31

## Statutes

O.R.C. § 3505.01 *et seq.* ................................................................................. passim

O.R.C. § 3513.257. ............................................................................................... 9

## Other Authorities

Erwin Chemerinsky, *Restrictions on the Speech of Judicial Candidates Are Unconstitutional*, 35 IND. L. REV. 735 (2002). .................................................... 20

Jud. Con. Rule 4.2(C). ........................................................................................ 18

Michael E. Solimine, *The False Promise of Judicial Elections in Ohio*, 30 CAP. U. L. REV. 559 (2002). ............................................................................................ 28

No. 14-3678

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

OHIO COUNCIL 8 AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al*.,

Appellants,

v.

SECRETARY OF STATE, *et al*.,

Appellees.

_____

On Appeal From The United States District Court
For The Southern District Of Ohio (Western Division)

_____

**BRIEF FOR APPELLANTS**

_____

On Election Day, Ohioans of all political persuasions flood the ballot booths to exercise their quintessential democratic right.  When they arrive, voters find dozens of candidates' names listed on the general ballots, almost all of which are accompanied by a party designation.  This "party label" as Democrats, Republicans, Independents or representatives of other parties provides the voters with a well-recognized "shorthand" description of the candidates' views on matters

of public concern.  All of the candidates benefit from being so described to the voters; all of the candidates except one.

An Ohio law prohibits judicial candidates—who become eligible for the general election by winning a state-sponsored partisan primary—from associating with a political party on the general ballot.  Revoking this important designation in the eleventh hour burdens the First Amendment rights of voters, political parties, and the candidates themselves.  In its effort to justify the law, Ohio asserts an interest in removing partisanship from judicial elections, but the State undermines this interest by permitting judges to associate any other way they desire.  For instance, judicial candidates—including active judges seeking reelection— campaign as members of political parties, appear at party fundraisers, and receive political party endorsements and advertising through Election Day.  It is *only* the prohibition of party designation on the ballot that purports to be nonpartisan.  Ohio simply cannot articulate how its law furthers an asserted interest in removing partisanship from judicial elections, or what makes Ohio so peculiar that it is the only state to conclude such an arrangement is appropriate.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants requests oral argument of this appeal because it involves two crucial constitutional questions regarding Ohio's judicial voting practices: (1) whether the current law actually furthers the state interest of avoiding partisanship

in state judicial elections and, if it does, (2) what burden the state can constitutionally place on the speech and associational rights of its voters, candidates, and political parties to accomplish such furthering of this interest. Appellants believe that the Court's examination of the merits of these important questions will be aided through counsel's discussion of them at argument.

## I.    JURISDICTIONAL STATEMENT

This case challenges the constitutionality of O.R.C. § 3505.04, which prevents a party label from being placed on the general election ballot for judicial candidates who have won a state-sponsored partisan primary election.  Appellants had personal jurisdiction in an Ohio federal court because Appellees were domiciled in Ohio, and subject matter jurisdiction because the constitutional challenge raises a federal question.  The District Court granted Appellee Ohio Attorney General's motion for summary judgment on June 3, 2014, and Appellants timely appealed from this order on July 2, 2014.  Order, R. 88, Page ID # 1089; Notice of Appeal, R. 90, Page ID # 1121.

## II.    STATEMENT OF ISSUES FOR REVIEW

Whether O.R.C. § 3505.04's stripping of a judicial candidate's party status during the minute or so a voter spends in the voting booth on Election Day furthers any government interest in avoiding partisan politics in judicial elections when the candidate is free to spend the rest of the six-year election and re-election

cycles, including party primary elections, in open affiliation with his or her political party?

Whether any government interest potentially furthered by O.R.C. § 3505.04 sufficiently outweighs the undeniable burdens it places on appellants' speech and associational rights to pass constitutional muster?

## III.    STATEMENT OF THE CASE

This action was filed on July 28, 2010 seeking, *inter alia*, to enjoin enforcement of O.R.C. § 3505.04.[1]  Complaint, R. 1, Page ID # 1.  The District Court denied the plaintiffs' request for a temporary restraining order and preliminary injunction on August 19, 2010.  Order Denying Motion for TRO, R. 49, Page ID # 807.  Plaintiffs appealed the District Court's Order and moved for an injunction pending appeal, but the Sixth Circuit denied the motion on August 20, 2010.  *Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO v. Brunner*, No. 10-4006 (6th Cir. filed Aug. 20, 2010) (Order Denying Motion for Injunction).  The Ohio Attorney General filed a motion for summary judgment on July 15, 2011, and after three years of motions practice and an evidentiary hearing, the District Court granted summary judgment on June 3, 2014.  Order, R. 88, Page ID # 1119.  This appeal challenges that order.

---

[1] Plaintiffs' challenge to the Ohio Code of Judicial Conduct is not part of this appeal.

## IV.   STATEMENT OF THE FACTS

Appellants in this case are two sitting state judges; one state judicial candidate; the Ohio Democratic Party on behalf of its 2.5 million registered voters; and Ohio Council 8 American Federation of State, County, and Municipal Employees, AFL-CIO ("Ohio Council 8") on behalf of its 50,000 members across Ohio.   They sought an order preliminarily enjoining O.R.C. § 3505.04, a state election law requiring nonpartisan ballots in the general election for judicial office. Throughout the judicial campaign and election, Ohio law permits full-blown partisanship, including conducting state-sponsored partisan primary elections preceding the general election.   Ohio calls these ballots listing candidates by political party "office type ballots."   O.R.C. § 3505.03.   But when voters walk into the booth to choose their preferred candidate, they find "nonpartisan ballots," which strip the party denomination from judicial candidates' names.   O.R.C. § 3505.04.   Appellants allege this system burdens their constitutional rights to association and expression and serves no state interest.

As the District Court found, "Ohio stands alone" in requiring that judicial "candidates first compete in a partisan primary and then in a nonpartisan general election."   Order, R. 49, Page ID # 791.   Furthermore, "judicial candidates are the only candidates in Ohio who appear on an office type ballot in the primary election but on a nonpartisan ballot in the general election."   Order, R. 49, Page ID # 792.

Candidates for the executive or legislative branch that "appear on an office type ballot in the primary also appear on an office type ballot in the general election." *Id.*

Because of the posture of the case, Appellants called witnesses and submitted exhibits only in the context of a TRO hearing, held August 13, 2010. They called six witnesses: Appellant Nadine Allen, judge for the Hamilton County Court of Common Pleas; Appellant Peter Corrigan, judge for the Cuyahoga County Common Pleas Court, General Division; Robert Davis, Political and Legislative Director for Appellant Ohio Council 8; Carri Twigg, Political Director for Appellant Ohio Democratic Party; Appellant Martha Good, candidate for the Ohio First District Court of Appeals; and Professor Michael Margolis, expert in voter behavior. They also submitted sixteen exhibits at that hearing. Defendants called no witnesses and submitted no exhibits related to the challenge to O.R.C. § 3505.04.

The testimony at the TRO hearing established that many voters are uninformed about judicial races. Transcript, R. 45, Page ID # 553 (Corrigan); Transcript, R. 46, Page ID # 624 (Twigg), Page ID # 650 (Good), Page ID # 705–706 (Margolis). Many uninformed voters do not vote in judicial races, a phenomenon termed "voter drop off." Transcript, R. 46, Page ID # 598–599 (Davis), Page ID # 620–621 (Twigg). Appellant Good testified that in 2008, a

significant percentage of voters elected not to cast a vote in the nonpartisan judicial elections. For example, of the voters who participated in the 2008 election, 1 percent "undervoted"—meaning they cast a ballot but did not vote for this particular office—in the race for President. *Id.* at Page ID # 655–656 (Good). In contrast, 30 percent of voters "undervoted" in one race for state Supreme Court Justice, and 32 percent in the race for common pleas court. *Id.* at Page ID # 659 (Good). Issue 8, physically located at the bottom of the ballot beneath the judicial offices, also had a lower undervote rate than any of the judicial races. *Id.* at Page ID # 657 (Good). In other words, voters skipped over the judicial races but then started voting again for the Issue. Carri Twigg of the Ohio Democratic Party corroborated that there is a tremendous voter drop off in Ohio's nonpartisan judicial races. *Id.* at Page ID # 621 (Twigg). For instance, in the 1998 general election, almost half a million fewer voters undervoted in the race for state treasurer—a "low-information" but partisan race—than in the race for Ohio Supreme Court Justice; she attributes this to lack of information regarding partisan affiliation for the judicial candidates. *Id.* at Page ID # 621–622 (Twigg). This is a common problem among uninformed voters, as Professor Michael Margolis testified. *Id.* at Page ID # 718–719 (Margolis).

Every judicial candidate in this case won a state-sponsored partisan primary election. Transcript, R. 45, Page ID # 495 (Allen), Page ID # 545 (Corrigan);

Transcript, R. 46, Page ID # 648 (Good). Ohio law, O.R.C. § 3505.04, then stripped them of their party label, eliminating the possibility that uninformed voters looking at the ballot on Election Day might take cues based on which candidate won which state-sponsored partisan primary. Many uninformed voters—Republican and Democrat—choose to vote in a particular race if the party affiliation of the candidate is set out on the ballot. Transcript, R. 46, Page ID # 708 (Margolis). For instance, Ohio Council 8's 46,000 members are both Republican and Democrat, and tend to use party affiliation as a guide to a candidate's philosophy and mission. Transcript, R. 46, Page ID # 596 (Davis).

Thus the candidates here were compelled by Ohio to participate in a partisan primary system and then prohibited from having their status as the primary winners listed on the general election ballot. Experts have testified that this causes voter drop off and suppresses voter participation among the members of the Democratic Party and the membership of Ohio Council 8. Additionally, it causes the candidates to be presented to the voters without a major identifier that they view as crucial to their presentation to the public—their party affiliation. Transcript, R. 45, Page ID # 547 (Corrigan).

Ohio has codified the government interest surrounding its election statutes: "providing the electorate with an understandable ballot, and enhancing voter education, thus fostering informed and educated expressions of the popular will in

8

a general election." O.R.C. § 3513.257. In this case, the District Court found that Ohio's additional interest in "diminishing reliance on political parties in judicial selection" was both "compelling" and advanced by O.R.C. § 3505.04. Order, R. 88, Page ID # 1088. Accordingly, the District Court granted summary judgment to the defendants. *Id.*

## V.   SUMMARY OF ARGUMENT

This case challenges an Ohio statute that imposes a significant burden on political parties, voters, and candidates without actually furthering the State's asserted state interest for doing so. As set out in O.R.C. § 3505.01 *et seq.*, Ohio allows judicial candidates to run in state-sponsored partisan primaries but then strips the winner of his or her party label on the general election ballot. Ohio is the only state in the Union that has deemed this electoral arrangement appropriate.

Ohio has asserted that O.R.C. § 3505.04 furthers the State's interest in "keeping politics out of the general election" for judges, Order, R. 49, Page ID # 796, which the District Court held entails both limiting the election of biased judges and preventing the appearance of judicial partiality, Order, R. 88, Page ID # 1100. Even if this state interest is legitimate, the Ohio statute does not further its purported goal. The political nature of judicial elections is already solidified because Ohio sponsors partisan primary elections, allows judicial candidates to be listed by party on the Secretary of State and Board of Election websites, and allows

parties to pass out slate cards that contain their endorsements. O.R.C. § 3505.04 therefore does nothing but burden the First Amendment rights of Appellants.

Contrary to the State's contention, O.R.C. § 3505.04 does not result in the election of unbiased judges. Judicial candidates win partisan primaries and publically campaign for votes from party members. When there is a large hole in the efficacy of the law, the State's purported interest is not "furthered." Similarly, the Ohio statute does not result in the appearance of judicial impartiality. It is a fallacy to assume that the public will disregard partisan campaigning. Since judicial partisanship is pervasive in all places except for the general election voting booth, it cannot be said the O.R.C. § 3505.04 furthers the State's asserted interest. Because it burdens Appellants' constitutional rights without furthering a legitimate state interest, it is invalid.

Even if this Court agrees with the District Court and concludes that O.R.C. § 3505.04 does further Ohio's asserted interest in removing partisan politics from judicial elections, the District Court erred when it determined that the state interest outweighs the constitutional burdens on the appellants. All three appellants in this case have suffered significant burdens. First, the Ohio Democratic Party's right to select and champion its nominees and educate its members and voters is significantly hindered by the Ohio statute. Unrebutted evidence shows a significant drop off in voter participation when voters get to the judicial races on

the general election ballot.  *See* Transcript, R. 46, Page ID # 607 (Davis); Page ID # 620–621 (Twigg); Page ID # 719 (Margolis).  Removing party labels from the judicial candidates that win their state-sponsored primaries denies the Party the opportunity to broaden its base of public participation in support of its activities.  Second, the voters' right to associate, receive information, and cast meaningful votes at the ballot box is obstructed.  Disabling voters from relying on partisan labels that they were previously directed to rely upon—indeed, that bifurcate the primary election process—creates confusion and significantly burdens the voters' ability to cast their votes effectively.  Third, the judicial candidates' right to express their qualifications and associate with their party after the primary victory is cut off.  After a candidate introduces herself in a partisan primary, the Ohio statute strips the partisan identity from her and makes the candidates indistinguishable to many voters who make their decisions in the voting booth.

For either of the above reasons, this Court should reverse the District Court's grant of summary judgment.

## VI.    ARGUMENT

Any state action burdening a constitutional right must be justified.  *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  Ohio fails to justify the burden it imposes because its precise interest—eliminating partisanship in judicial elections—is not advanced at all.  Even if Ohio's interest is advanced, it is not advanced enough to

justify the burden on Appellants' First Amendment rights. *Id.*; *Burdick v. Takushi*, 504 U.S. 428, 439–40 (1992). Because Ohio's interests are not sufficiently advanced, the Court should reverse the District Court's grant of Defendant's motion for summary judgment. *Rosen v. Brown*, 970 F.2d 169, 177–78 (6th Cir. 1992) (reversing the application of strict scrutiny, yet holding Ohio's restriction on party designation unconstitutional because Ohio's precise interests were not sufficiently furthered by its ballot restriction) (citing *Anderson*, 460 U.S. at 789).

### A. To Justify a Constitutional Burden, a State's Asserted Interest Must be Sufficiently Furthered.

The Supreme Court established the analytical framework for determining the constitutionality of a state ballot restriction in *Anderson v. Celebreeze*. 460 U.S. 780, 788 (1983). Under this framework, the Court is to identify the "character and magnitude of the asserted injury," *id.* at 789, and then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* When determining the weight of the justification put forward by the State, "the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms. " *Id.* at 806 (internal quotations omitted). Importantly, *Anderson* requires both that the state interest is legitimate and that the burden is necessary in order to further its interest.

In *Anderson*, Ohio offered three interests justifying the burden that its early filing deadline placed on the First Amendment rights of candidates and voters. 460 U.S. at 797. The Court rejected all three on tailoring grounds. First, the Court rejected the State's purported interest in voter education, because the measure was potentially counterproductive to that interest; this lessened the weight given to the state's interest. *Id.* at 797–98. Second, the Court found that the State's interest in "equal treatment" among all candidates actually placed different burdens on various candidates and voters, which rendered it insufficiently tailored. *Id.* at 799–800. Third, the State's purported interest in promoting political stability was also cast aside—notwithstanding the legitimacy of the interest itself—because an early filing deadline did not actually promote political stability. *Id.* at 805. After addressing the under- and over-inclusive nature of Ohio's early filing deadline, the Court held Ohio's "minimal interest in imposing [an early filing] deadline" could not justify its constitutional burden. *Id.* at 806.

In *Burdick*, the Supreme Court further expounded on the analytical framework established in *Anderson*. There, the Court addressed the degree to which a state's policy must be tailored in order to justify a measure burdening the plaintiff's constitutional rights. *Burdick v. Takushi*, 504 U.S. 428 (1992). It upheld Hawaii's prohibition of write-in voting, which burdened the petitioner's associational rights, after finding the measure was sufficiently tailored. *Id.* at 439.

13

At the primary stage, the write-in prohibition protected the healthy two-party system by preventing party raiding while also eliminating the threat of intra-party feuds continuing throughout the general election.  *Id.*  Although the majority and dissent disagreed over what degree of tailoring was required, the court was in unison for requiring that the state restriction had to sufficiently further the state's legitimate interest.  *Id.* at 440 n.10.

Employing the Supreme Court's analysis, this Circuit held in *Rosen* that a law failing to further the purported state interest cannot justify a constitutional burden.  970 F.2d at 175–76.  Specifically, the Court rejected Ohio's legitimate interest in producing a manageable ballot because the interest was not served by excluding the designation of "Independent" from the general ballot.[2]  *Id.*  The Court noted, "Ohio will not produce a shorter or smaller ballot" by enforcing the provision, and accordingly rejected Ohio's attempt to justify the burdened rights by claiming "highly questionable" state interests.  *Id.* at 175–176, 178.

O.R.C. § 3505.04 similarly fails to advance its purported interest.

---

[2] The *Rosen* court also discredited the State's first purported interest in minimizing ballot-generated confusion because "that does not appear to be Ohio's purpose." 970 F.2d at 177.  That analysis is not relevant to the case at bar because Appellants assume that Ohio's purpose here, albeit misguided, is in diminishing reliance on political parties in judicial selection.

**B.**     **Requiring Nonpartisan Ballots in the General Election Does Not Actually Further Ohio's Asserted Interest.**

The District Court discussed only one state interest at stake: "minimizing partisanship in judicial elections."  Order, R. 88, Page ID # 1113.  Ohio's scheme of partisan primaries and subsequent "nonpartisan" general elections fails to advance its interest in minimizing partisanship in judicial elections.  Since O.R.C. § 3505.04 does not further Ohio's asserted state interest, and burdens the Appellants' First Amendment rights,[3] Ohio cannot justify the statute under the *Anderson-Burdick* analysis.

As analyzed by the District Court, minimizing partisanship in judicial elections entails two differentiable interests: actual and apparent impartiality. Order, R. 88, Page ID # 1113–1115, 1118.  Ohio assumes judicial candidates who win elections will be less biased because the candidate's party did not appear next to the candidate's name on the general ballot.  Additionally, the State argues that the absence of a judicial candidate's party affiliation will lead voters to believe judicial candidates are less partisan, and thus voters will have greater respect for the impartiality of Ohio's state courts.  The following two sections address in turn the illusory way in which O.R.C. § 3505.04 purports to further these interests.

─────────────────

[3] *See infra* at VI.C.

15

### 1.     Actual Impartiality: O.R.C. § 3505.04 Does Not Advance Ohio's Interest in Electing Actually Impartial Judges

Ohio's claim that Section 3505.04 furthers an interest in electing judicial candidates unbiased by political parties suffers from a tailoring problem similar to what Kentucky encountered in *Carey v. Wolnitzek*.  614 F.3d 189 (6th Cir. 2010). In *Carey*, this Circuit rejected a Kentucky statute that prohibited judges and candidates from disclosing their party affiliation in any form of advertising because the suppression of political affiliation lacked sufficient relation to Kentucky's interest in electing unbiased judges.  *Id.* at 200.  As the court stated:

> [i]f concern over judicial partisanship and the influence of political parties on judging truly underlies the [party affiliation] clause, the authorization to belong (secretly) to a political party amounts to a gaping omission. A party's *undisclosed potential influence on candidates is far worse than its disclosed influence*, as the one allows a full airing of the issue for the voters while the other helps to shield it from public view.

*Carey*, 614 F.3d at 202 (emphasis added).  The quoted language underscores the government interest in transparency, rather than secrecy, with respect to party affiliations.  This court made clear in *Carey* that censoring a candidate's ballot association does nothing to ensure impartiality toward litigants who will later appear before the court, should the candidate win the election.  *Id.*  There is no interest served by stripping the party affiliation after using a partisan process to select the candidates.

16

As the Court further recognized in *Carey*, a regulation can hardly be said to further a state's purported interests when a hole in the policy counteracts the effect of the regulation.   In *Carey*, although judges were prohibited from proactively communicating their political beliefs, the same judges were allowed to discuss political association if first asked by a voter.   *Id.* at 202.   In a similar fashion, the remainder of Ohio's judicial election scheme eradicates the purpose of O.R.C. § 3505.04.   Ohio's election scheme allows parties to nominate judicial candidates through partisan primaries, and publically endorse and campaign for them before the general election.   Party members, even the judicial candidates themselves, can stand at polling places and distribute model ballots to voters about to cast their votes at the general election.   Ohio itself publishes judicial candidates' party affiliation on its County Board of Elections website for the entire public to view.   Like *Carey*, the state's purported interest cannot be deemed "furthered" where a hole this glaring so undermines the efficacy of the law.

The reasoning in *Rosen* also demonstrates the importance of tailoring. Applying an intermediate level of scrutiny, the Court discredited Ohio's purported interest in producing a more manageable ballot because by "excluding [party] designation from the ballot, Ohio will not produce a shorter or smaller ballot." 970 F.2d at 177.   The Court recognized that producing a manageable ballot was a

legitimate state interest, but as in *Carey* the Court held that the state's chosen method fails to actually advance its legitimate interest.

Ohio's interest in electing unbiased jurists is not furthered by O.R.C. § 3505.04. By sponsoring partisan primaries for judicial candidates, the State encourages its future jurists to associate with a political party before the primary stage in an effort to reach the general ballot. The winners of those primaries then campaign for the general election and stand before the public as their party's chosen candidate. In addition, judicial candidates undertake any number of overtly partisan acts while campaigning, and political parties champion their primary winner at campaign fundraisers, on political ads, and on sample ballots that voters can reference while in the voting booth on Election Day. *See* Jud. Con. Rule 4.2(C).

The partisanship does not stop there under the current regime. Once a candidate is successful in the general election, she takes her seat on the bench. When her term expires and she chooses to run again, this time as the incumbent, she will publically reclaim the mantle of her political party and begin campaigning in her party's primary. If successful there, she is once more championed by her party, appearing again at fundraisers, on political advertisements, and on sample ballots—all while sitting as a judge. A judicial candidate seeking reelection can promise the public she will adhere to her party's beliefs and tenets, all the while

adjudicating disputes on a wide variety of issues between parties of various political persuasions.

In sum, the candidate establishes a profound association with her party well before the general election, to a degree that the law at issue here cannot undo. For this reason, O.R.C. § 3505.04 does not advance Ohio's purported interest in reducing bias among its State's jurists.

Indeed, Ohio's law is arguably counterproductive to its asserted interest. As in *Anderson*, where Ohio's early filing deadline operated against the state's interest in educating voters, O.R.C. § 3505.04 may counterproductively increase judicial candidates' reliance on partisanship. Judicial candidates may be further incentivized to rely on the party throughout the campaign because they 1) are compelled to run in a state-sponsored partisan primary, 2) are aware voters look to party affiliation and consider it to be the most important piece of information many voters see, and 3) know their party will not be identified on the general ballot. This could be a candidate's only way to compensate for lacking a crucial cue in the voting booth. The potential counterproductive impact of O.R.C. § 3505.04 further undermines the law's tailoring.

### 2.    Apparent Impartiality: O.R.C. § 3505.04 Does Not Advance Ohio's Interest in Electing Apparently Impartial Judges.

The State's argument that prohibiting party identification on the general ballot advances its interest in protecting the appearance of judicial impartiality is

equally unpersuasive.  Ohio assumes that suppressing judicial partisanship on the general election ballot will preserve the appearance of judicial impartiality, thereby leading the public to believe that its courts are unbiased.  However, that assumption is not self-evident.  As Professor Erwin Chemerinsky has pointed out:

> [I]t is not at all clear as to what is enough to make a judge impermissibly appear to be biased. Does a judge lack impartiality if the judge has decided several similar cases in a particular direction and it is clear from them how a current case will be resolved? If the judge has written a judicial opinion expressing views on exactly the issue now pending, does that make the judge appear impermissibly partial? If the judge's ideology makes a result highly likely, does that violate the need for the appearance of impartiality? These situations occur all the time, and I never have heard anyone suggest that they violate due process. I cannot imagine a credible argument that it violates due process for Justice Scalia to sit on abortion cases, though it is absolutely clear as to how he will vote.

Erwin Chemerinsky, *Restrictions on the Speech of Judicial Candidates Are Unconstitutional*, 35 IND. L. REV. 735, 745 (2002).

Courts have been similarly quick to acknowledge the fallacy of Ohio's assumption.  In *Republican Party of Minn. v. White* (*White I*), the Supreme Court heard a challenge to Minnesota's "announce clause," which prohibited judicial candidates from announcing their positions on disputed legal or political issues.  536 U.S. 765, 770–71 (2002).  In rejecting the State's interest in judicial open-mindedness—the belief among litigants that they have a chance to prevail because the judge is capable of being persuaded by views opposed to his preconception—

the Court held that "the announce clause is so woefully underinclusive as to render belief in that purpose a challenge to the credulous." *Id.* at 780.

In other words, the announce clause's tailoring was so deficient, the Court inferred that it could not be for the purpose of furthering apparent impartiality. Although the law prevented judicial candidates from announcing their view on legal issues while campaigning, judges constantly communicate their positions on legal issues to the public when they write opinions. *Id.* This interest was further undermined by the views that judges express before they even become a judicial candidate—for instance, when teaching and writing about the law. *Id.* For the Court, "[t]he problem [was] that statements in election campaigns are such an infinitesimal portion of the public commitments to legal positions that judges (or judges-to-be) undertake, that this object of the prohibition is implausible." *Id.* at 778–79. The Court unequivocally rejected the proposition that suppressing a judicial candidate's potential biases promotes the interest that the candidate will be—or appear to be—more "impartial" once becoming a jurist.

While the District Court recognized O.R.C. § 3505.04 was untailored to further Ohio's interest in actual judicial impartiality, it determined that O.R.C. § 3505.04 does advance Ohio's interest in preserving the appearance of judicial impartiality. Addressing the appearance of impartiality, the District Court noted that "the brazen injection of politics into judicial primaries very nearly eviscerates

21

any benefit served by nonpartisan general elections." Order, R. 88, Page ID # 1118. Although this "very near[] eviscerate[ion]" of the perceived benefit finding by the District Court is quite telling on its own, the truth is that the finding did not go far enough. If partisan politics ended after the primary, perhaps a nonpartisan general election could still further the State's interest in preserving the appearance of the impartiality of its courts. As noted above, however, Ohio's general election scheme for judicial candidates is anything but nonpartisan.

In *White I*, the Supreme Court clearly rejected the notion that suppressing judicial preconceptions from the public generates a greater belief in impartiality. As the District Court noted, "Ohio steeps the judicial selection process in partisan politics everywhere *but* in the voting booth on election day." Order, R. 88, Page ID # 1115 (emphasis original). It is misguided to assume that the public will disregard partisan campaigning inherent in elections, as if memories of pervasive partisan campaigning disappear when party affiliation is withheld from the general ballot. In fact, because partisan labels are withheld from the ballot, a judicial candidate might emphasize her party affiliation *more* during the election process than they would otherwise. This is so because candidates and political parties want partisan voters to remember who they voted for in the primary 8 months prior.[4]

---

[4] In 2008, the primary was conducted in March. *See* Transcript, R. 46, Page ID # 631 (Twigg).

22

Assuming that preserving the actual and apparent impartiality of state judges constitutes a legitimate state interest, O.R.C. § 3505.04 fails to further either.

If the interest is furthered, it is not furthered enough to justify the burden on Appellant's First Amendment rights under the *Anderson-Burdick* analysis.

**C.**     **The District Court Failed to Properly Balance the Appellants' First Amendment Burdens Against the Alleged State Interest Supporting O.R.C. § 3505.04.**

Because O.R.C. § 3505.04 does not further Ohio's asserted interest in removing politics from judicial elections, the statute is unconstitutional if it provides for any burden on appellants' First Amendment rights. Even if this Court agrees with the District Court and finds that O.R.C. § 3505.04 marginally furthers Ohio's asserted interest in removing partisanship from judicial elections, the District Court erred when it determined that this state interest outweighs the constitutional burdens on the appellants. The Ohio statute burdens the First Amendment rights of all three appellants in this case: (1) the Democratic Party's right to select and champion its nominees and educate its members and voters, (2) the voters' rights to associate, receive information, and cast meaningful votes at the ballot box, (3) and the judicial candidates' right to express their qualifications and associate with their party after the primary victory.

### 1.  The Democratic Party is Significantly Burdened.

The Democratic Party's First Amendment rights of speech and association are significantly burdened by the state-mandated removal of party labels from the general election ballot.  The ballot is the only document seen by all of the voters who participate in the general election.  Transcript, R. 46, Page ID # 601 (Davis), Page ID # 623 (Twigg).  State law requires the Party to select its candidate for each judicial seat through a partisan primary election.  Subsequently, party labels are removed from the general election ballot and the candidates are introduced to the general electorate as if they were not endorsed by any political party.  This state-sponsored bait-and-switch confers two burdens on the Party.  First, the Party is denied an opportunity to identify with its primary winner and broaden the base of public participation in and support for its activities.  Second, dramatic voter drop off occurs in the Ohio judicial races because there are no party identifiers on the ballot for judicial candidates.  *See* Transcript, R. 46, Page ID # 607 (Davis); Page ID # 620–621 (Twigg); Page ID # 719 (Margolis).  While the District Court noted the existence of voter drop off, it failed to correctly address the impact of the drop off on the Party.  *See* Order R. 88, Page ID # 1106.

        a.      *The Opportunity to Identify with the Primary Winner and Broaden the Base of Public Participation in Support of its Activities.*

Political parties are an accepted and important part of the electoral process. In fact, "the right to be on the election ballot is precisely what separates a political party from any other interest group." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 373 (1997) (Stevens, J., dissenting). The Supreme Court has held that the freedoms of association and speech guaranteed by the First Amendment extends to political parties, and it is "beyond debate that freedom to engage in association for the advancements of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958)). Numerous other cases underscore the central role played by parties in our electoral system and outline their rights. For instance, the associational rights of political parties include the right to select its nominees, *California Democratic Party v. Jones*, 530 U.S. 567 (2000); the right to endorse or oppose political candidates, *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989); the right to access the ballot, *Norman v. Reed*, 502 U.S. 279 (1992), *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979); the right to define its own membership qualifications, *Rosario v. Rockefeller*, 410 U.S. 752 (1973), *Nader v.*

*Schaffer*, 417 F.Supp. 837 (D.C. Conn. 1976), summarily aff'd, 429 U.S. 989 (1976); and the right to refuse to seat delegates at its convention who were chosen contrary to party rules, *Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107 (1981), *Cousins v. Wigoda*, 419 U.S. 477 (1975).

A political party is particularly vulnerable to a statute that threatens its ability to communicate with its members and voters. Given the important role political parties play in our electoral system, the District Court unduly minimized the impact of ballot language restrictions on political parties. The Supreme Court has repeatedly recognized that "debate on the qualifications of candidates [is] integral to the operation of the system of government established by our constitution." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (*per curiam*). Indeed, the First Amendment has its "fullest and most urgent application to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. at 224 (citing *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272 (1971)).

Ohio's ban on partisan labels on the general election ballot prevents a party from stating whether a candidate adheres to the tenets of the party or whether party members believe that the candidate is qualified for the position sought. This prohibition directly impedes the Democratic Party's ability to spread its message. While it is true that political parties in Ohio can support their primary winner by

including them on slate cards and other mailings distributed prior to the general election, that does not mean the Party's speech and associational rights are not burdened.  Uninformed voters are a real phenomenon that will always be present in any large election.  Expert testimony has indicated that many registered voters feel it is "a civic duty to participate and exercise [their] choice," despite not being fully informed of each candidate's stance on all relevant issues.  Transcript, R. 46, Page ID # 706 (Margolis).  Imposing limitations on a party's ability to advance its views on a candidate's qualification to these voters is clearly a restraint on association.

As the District Court correctly noted, Ohio is the only state that directs voters to select judicial candidates in a partisan primary but then hides from them the party identifier when they return to the ballot box in the general election.  Order, R. 49, Page ID # 791.  The State of Ohio has yet to adequately explain how the restriction advances its claimed interest in removing politics from the judicial elections or what makes Ohio so peculiar that it is only state to conclude such an arrangement is appropriate.

### b.    *Dramatic Voter Drop Off.*

The record in this case demonstrates that a significant percentage of uninformed voters simply do not vote in judicial races.  For instance, of the voters who participated in the 2008 general election, 30 percent declined to cast a vote for a position on the Ohio Supreme Court.  Transcript, R. 46, Page ID # 659 (Good).

On the same ballot, 32 percent chose not to vote for a Hamilton County Common Pleas Court judge. *Id.* From 1980 to 1995, the average drop off for Ohio Supreme Court elections was about 20 percent. *See* Michael E. Solimine, *The False Promise of Judicial Elections in Ohio*, 30 CAP. U. L. REV. 559, 564 (2002). Voter surveys indicated that significant numbers of voters could not recognize the judicial candidates or could not rate them, and in general "voters knew little about the candidate." *Id.* at 563.

Many voters who go to the polls knowing little about the candidates simply choose not to participate in judicial elections when there is no partisan identifier to rely upon. Under Ohio's current electoral regime, an uninformed voter looking at the ballot on Election Day cannot determine which candidate won the Republican primary and which candidate won the Democratic primary. The unrebutted evidence shows that prohibiting party identifiers causes voter drop off, thereby frustrating the associational rights of the Ohio Democratic Party.

Voter participation is an extremely important associational goal for a political party. The primary purpose of a political party is to organize likeminded individuals in order to achieve common political and social goals. The political director from the Ohio Democratic Party has testified that part of her job is to support and encourage voter education. Transcript, R. 46, Page ID # 615 (Twigg). A statute that clearly diminishes a party's ability to educate its members imposes a

significant burden on its rights of association and speech.  The Democratic Party's message to its 2.5 million members that appellants Allen, Corrigan, and Good are its standard bearers is diluted.  O.R.C. § 3505.04 prevents the Party from announcing to its members that certain candidates are qualified for the position and adhere to the Party's shared beliefs and tenets.  In the absence of this statute, the Ohio Democratic Party would be able to reach these voters and increase participation in judicial races.

### 2.    Ohio Voters are Significantly Burdened.

Restrictions on political parties by their nature burden the associational rights of their members, i.e., the voters.  *Tashjian*, 479 U.S. at 215–216.  The right of political parties to spread their message is closely tied to the voters' right to receive it.  As the Supreme Court has said, "[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."  *Id.* The Court also stated that "to the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."  *Id* at 551–552. By eliminating the party label after steering voters through judicial candidate selection via state-sponsored partisan primaries, Ohio places a significant burden

on the right of the voters to rely on those party labels when they are in the voting booth.

In *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989), the Supreme Court was confronted with a California statute that banned political party primary endorsement. Justice Marshall, writing for the Court, struck down the ban not only because it burdened the political party, but also because it "ham[strung] voters seeking to inform themselves about the candidates and the campaign issues." *Id.* at 223. The Court noted that any "highly paternalistic approach" limiting what people may hear is generally suspect. *Id.* at 224 (citing *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976)).

Similarly, in *Williams v. Rhodes*, 393 U.S. 23, 24 (1968), Ohio's election laws made it virtually impossible for a new political party with hundreds of thousands of members to be placed on the ballot. The Court held that the laws violated the Equal Protection Clause by favoring established political parties over new ones. Importantly, the Court also held that Ohio's laws heavily burdened the right of individuals to associate for the advancement of political beliefs and the right of qualified voters to cast their votes effectively. *Williams*, 303 U.S. at 30. "[T]he right of individuals to associate for the advancement of political beliefs, and

the right of qualified voters, regardless of their political persuasion, to cast their votes effectively . . . rank among our most precious freedoms." *Id.* at 30.

O.R.C. § 3505.04 clearly burdens this "precious freedom."  Disabling voters from relying on partisan labels that they were previously directed to rely upon— indeed, that bifurcate the primary election process—creates confusion and significantly burdens the voters' ability to cast their votes effectively.  While it is true that election laws by their nature affect an individual's right to vote and associate with others for political ends, O.R.C. § 3505.04 is an unreasonable interference with this right given that Ohio sponsors partisan judicial primaries.

While acknowledging that a burden did in fact exist, the District Court downplayed the severity of the voters' burden by noting that "there are a means by which voters can meaningfully exercise their associational rights despite the ballot restrictions set forth by O.R.C. § 3505.04."  *See* Order, R. 88, Page ID # 1107.  If this is true, however, it only serves to emphasize the unreasonableness of the Ohio statute.  On one hand, Ohio has chosen to burden the voters' associational rights with the aim of removing party politics from judicial elections.  On the other hand, as the District Court found, the severity of the voters' burden is diminished because information about a judicial candidate's party affiliation is "widely available."  *Id.* at Page ID # 1106.  There is an illogical undercurrent to the District Court's argument.  If the Ohio statute is furthering its intended result of removing

31

party politics from judicial elections, then why is information about a judicial candidate's party affiliation "widely available"?  Ohio has unreasonably chosen to burden Ohio voters without furthering its asserted state interest.

### 3.   The Judicial Candidates are Significantly Burdened.

There is no longer any doubt that the freedom to associate with others for the common advancement of political beliefs and ideas is protected by the First Amendment.  *Kusper v. Pontikes*, 414 U.S. 51, 57 (1973) (holding that a statute prohibiting a person from voting at a primary if he has voted at a primary of another political party within the preceding 23 months an unconstitutional infringement on the right of association).  The Supreme Court has held that "the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom."  *Id.*

A candidate's status as a party nominee reflects the candidate's qualifications for office.  Speech about a candidate's qualifications is a core First Amendment right.  *Republican Party of Minn. v. White* (*White I*), 536 U.S. 765 (2002); *Carey v. Wolnitzek*, 614 F.3d 189, 198 (6th Cir. 2010).  As the Sixth Circuit has noted, "Party affiliation has the same, *if not more*, importance than the identity of the candidate."  *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 592 (6th Cir. 2008) (emphasis added) (holding that Ohio's third-party ballot access rules imposed a severe burden on the minor party).  Judicial candidates are

32

introduced to voters in Ohio through state-sponsored partisan primaries.  In other words, their party affiliation is inherent in how they are first revealed to voters.  The Ohio statute strips the partisan identity from the candidate and makes the candidates indistinguishable to many voters who make their decisions in the voting booth.

Most instructive in this regard is *Rosen v. Brown,* 970 F.2d 169 (6th Cir. 1992).   In *Rosen*, an independent candidate sought to place the designation "Independent" below his name on the Ohio general election ballot.  The court did not apply strict scrutiny, but nevertheless held that the State impermissibly burdened the candidate's First Amendment rights by failing to include the party label on the ballot.  O.R.C. § 3505.03 was held to burden the First Amendment right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of political affiliation, to cast their votes effectively.   According to the court, "An election ballot is a State-devised form through which candidates and voters are required to express themselves at the climactic moment of choice."  *Id.* at 175.

In *Rosen*, the court noted evidence showing that "party identification is the single most important influence on political opinions and voting."  *Id.* at 172.  It held that once the state places a subject on the ballot and legislates what should appear on the ballot, "it must take into account the provisions of the Federal and

State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws." *Id.* at 175. The District Court in the case at bar narrowly construed *Rosen,* dismissing it as a case that simply held that a state "could validly prohibit political designations on ballots, but if it allows any designations, it may not discriminate by permitting some designations but not others." Order, R. 49, Page ID # 797. To the contrary, this case stands for the proposition that eliminating party labels from the general election ballot indeed burdens candidates and can only be permitted by a reasonable state restriction.

As shown above, O.R.C. § 3505.04 clearly burdens the Party, the voters and the candidates. As set out below, the court erred when it held that the "nearly eviscerate[d]" state interest in keeping the appearance of politics out of judicial races outweighed these burdens.

> **4.    The District Court Erred When it Held that Ohio's Asserted Interest Outweighed the Burdens Placed on Appellants.**

Even if this Court agrees with the District Court and concludes that O.R.C. § 3505.04 somehow furthers Ohio's asserted interest in removing partisan politics from judicial elections, the District Court erred when it determined that this furthering of the state's interest outweighs the constitutional burdens on the appellants. The District Court noted that "Ohio's efforts in diminishing reliance on political parties in judicial elections is half-hearted at best." Order, R. 88, Page ID

# 1116. Under the *Anderson-Burdick* test, the Court is to weigh the "character and magnitude of the asserted injury" against the "precise interests put forward by the State." *See Anderson*, 460 U.S. at 788 (1983); *Burdick*, 504 U.S. 428 (1992).

Under this test, the substantial burdens on appellants' constitutional rights clearly outweigh Ohio's asserted state interest. A statute that so marginally moves the needle towards its purported goal cannot be considered a reasonable interference with appellants' First Amendment rights. While the District Court argued that O.R.C. § 3505.04 is a "step in the right direction," it failed to recognize that this step is so trivial that one cannot reasonably suggest it is worth the voter confusion and hindrance on association that results.

## VII.  CONCLUSION

If the phrase "damning with faint praise" ever has application, it applies to the District Court's endorsement of O.R.C. § 3505.04 below. The Court found that the statute did NOT further the state's asserted interest in avoiding *actual* judicial partiality. The Court also found that Ohio's "brazen injection of politics into judicial primaries very nearly eviscerates any benefit served by nonpartisan general elections" with respect to eliminating the *appearance* of judicial partiality. The Court concluded that "Ohio's . . . approach serves neither interest particularly well," Order, R. 88, Page ID # 1118, and that "Ohio's efforts in diminishing reliance on political parties in judicial elections is half-hearted at best." Order, R.

35

88, Page ID # 1116.  Nonetheless, the Court believed that it could not "strike down an election law that fails to achieve, or even runs contrary to, the State's stated objectives so long as the law does not impinge on anyone's constitutional rights." Order, R. 88, Page ID # 1097–98.

The *Anderson-Burdick* framework requires better than this.  It demands that the court weigh "the character and magnitude of the asserted injury" against "the precise interest put forward by the State as justification for the burden imposed by its rule."  *Anderson*, 460 U.S. at 789.  Appellants suffered real burdens to their First Amendment rights of speech and association, and the evidence shows O.R.C. § 3505.04 does nothing—or very little—to further Ohio's interest in removing politics from judicial elections.  In either case, the burdens placed on Appellants' constitutional rights outweigh the government interest advanced by the law.  Accordingly, this Court should reverse the grant of summary judgment by the District Court and issue an order declaring O.R.C. § 3505.04 unconstitutional under the *Anderson-Burdick* framework.  It should further direct the Secretary of State in the next election to place judicial elections on the office type ballot, in the proper position with party identifiers, and to issue a directive to all county boards of election to do the same.

Respectfully submitted,


/s/ Stephen L. Braga

Alphonse A. Gerhardstein        Stephen L. Braga

Jennifer L. Branch               (Counsel of Record)

Gerhardstein & Branch        David Martin (Third Year Law Student)

432 Walnut Street              Cory Ward (Third Year Law Student)

Suite 400                    Jack Zugay (Third Year Law Student)

Cincinnati, Ohio 45202       UNIVERSITY OF VIRGINIA

(513) 621-9100              SCHOOL OF LAW

agerhardstein@gbfirm.com    Appellate Litigation Clinic

580 Massie Road, SL-251

Charlottesville, VA 22903-1789

(434) 924-3825

stevebraga@virginia.edu


*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Sixth Circuit Local Rule 32(a)(7)(B).  According to the word-processing system used for the brief, it contains 8,586 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in the Times New Roman 14 point font size.

<u>/s/ Stephen L. Braga</u>

Date: October 14, 2014

## CERTIFICATE OF SERVICE

I hereby certify that, on October 14, 2014, the foregoing brief was served electronically on all attorneys of record through the Court's electronic filing and service system.

/s/ Stephen L. Braga
Counsel for Appellants

Date: October 14, 2014

### DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Description of Document | Docket Entry | Page ID # |
|---|---|---|
| Complaint | R. No. 1 | 1 |
| Transcript of Hearing re: Temporary Restraining Order | R. No. 45 | 495, 545, 547, 553 |
| Transcript of Hearing re: Temporary Restraining Order | R. No. 46 | 596, 598–99, 601, 607, 615, 620–21, 623–24, 658, 650, 659, 705–06, 708, 719 |
| Plaintiffs' Exhibit 22 | R. No. 46 | 746 |
| Plaintiffs' Exhibit 23 | R. No. 46 | 746 |
| Plaintiffs' Exhibit 24 | R. No. 46 | 746 |
| Order Denying Motion for Temporary Restraining Order | R. No. 49 | 791–92, 796–97, 807 |
| Order Granting Motion for Summary Judgment | R. No. 88 | 1088–89, 1097–98, 1100, 1106–07, 1113–16, 1118–19 |
| Notice of Appeal | R. No. 90 | 1121 |