Case No.  2014-3678

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

OHIO COUNCIL 8 AMERICAN FEDERATION OF STATE COUNTY &
MUNICIPAL EMPLOYEES, *et al.*

*Appellants-Plaintiffs*

v.

SECRETARY OF STATE JENNIFER BRUNNER, *et al.*

*Appellees-Defendants*

---

## BRIEF OF APPELLEES-DEFENDANTS

---

Respectfully submitted,

MICHAEL DEWINE
Ohio Attorney General

RENATA Y. STAFF (0086922)
RYAN L. RICHARDSON (0090382)
Assistant Attorneys General
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
T: 614-466-2872; F: 614-728-7592
renata.staff@ohioattorneygeneral.gov
ryan.richardson@ohioattorneygeneral.gov

*Counsel for Appellees-Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................III

STATEMENT REGARDING ORAL ARGUMENT ...............................1

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUE.........................................................................2

I.  Plaintiffs' lawsuit and request for emergency relief. ....................2

II.  The district court denies emergency relief. ...................................3

III.  Plaintiffs appeal denial of motion for preliminary injunction
and this Court affirms the district court's order. ..........................4

IV.  The district court deems the statute constitutional and grants the
Ohio Attorney General's Motion for Summary Judgment.............5

SUMMARY OF THE ARGUMENT .......................................................7

ARGUMENT ...........................................................................................8

I.  Standard of Review.........................................................................8

II.  Ohio's use of non-partisan ballots does not burden Plaintiffs'
First Amendment rights. ...............................................................10

    A.  The district court correctly held that Ohio's use of non-
partisan ballots does not burden expressive rights.............10

    B.  The district court correctly held that Ohio's use of non-
partisan ballots for judicial candidates does not burden
Plaintiffs' associational rights. ...........................................13

        1.  Non-partisan ballots do not burden the party's
associational rights.................................................13

        2.  Ohio's use of non-partisan ballots does not burden
the associational rights of Ohio voters......................17

        3.  Ohio's use of non-partisan ballots does not burden
judicial candidates' associational rights. ..................19

III.   The State's interests underlying the use of non-partisan ballots
       for judicial candidates outweighs any burden imposed by their
       use. ...................................................................................................20

CONCLUSION ..................................................................................22

CERTIFICATE OF COMPLIANCE.....................................................24

CERTIFICATE OF SERVICE ...............................................................24

DESIGNATION OF DISTRICT COURT RECORD .............................25

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)...........................................................................8

*Bullock v. Carter*,
  405 U.S. 134 (1972)..........................................................................21

*Burdick v. Takushi*,
  504 U.S. 428 (1992)....................................................................8, 9, 15

*Carey v. Wolnitzek*,
  614 F.3d 189 (6th Cir. 2010) ............................................11, 21, 22

*Eu v. San Francisco County Democratic Central Comm.*,
  489 U.S. 214 (1989).....................................................................16, 17

*Jenness v. Fortson*,
  403 U.S. 431 (1971).........................................................................9, 21

*Libertarian Party of Ohio v. Blackwell*,
  462 F.3d 579 (6th Cir. 2006) .....................................................*passim*

*Nev.Comm'n on Ethics v. Carrigan*,
  131 S. Ct. 2343 (2011).......................................................................10

*Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-
  CIO v. Brunner*,
  No. 10-4006 (6th Cir. Aug. 20, 2010) ..............................................5

*Republican Party of Minn. v. White*,
  536 U.S. 765 (2002).....................................................................10, 11

*Rosen v. Brown*,
  970 F.2d 169 (6th Cir. 1992) ......................................................11, 12

*Storer v. Brown*,
  415 U.S. 724 (1974).........................................................................9, 21

*Tashjian v. Republican Party of Conn.*
  479 U.S. 208 (1986).............................................................................18

**Cases**                                                                                              **Page(s)**

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 350 (1997).............................................................................*passim*

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)...........................................................................13, 16

*State ex rel. Weinberger v. Miller*,
    87 Ohio St. 12, 99 N.E. 1078 (Ohio 1912)................................................2, 7, 21

*Williams v. Rhodes*,
    393 U.S. 23 (1968)..............................................................................19

**Statutes**                                                                                           **Page(s)**

28 U.S.C. § 1292(a)(1).........................................................................1

28 U.S.C. § 1331..............................................................................1

Ohio Revised Code §. 3505.04 ...........................................................*passim*

**Other Authorities**                                                                                  **Page(s)**

U.S. Const., First Amendment.............................................................*passim*

U.S. Const., Fourteenth Amendment .......................................................9

## STATEMENT REGARDING ORAL ARGUMENT

Defendants do not oppose Plaintiffs' request for oral argument. Rather, Defendants defer to the Court's discretion as to whether oral argument will aid the decision-making process.

## JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction over Plaintiffs' First Amendment challenge under 28 U.S.C. § 1331. On June 3, 2014, the district court granted Intervenor Attorney General's Motion for Summary Judgment. (Order granting Defendant Ohio Attorney General's Motion for Summary Judgment, Doc. 88, Page ID # 1087-1119.) Plaintiffs-Appellants timely appealed the district court's decision on July 2, 2014. (Notice of Appeal, Doc. 90, Page ID # 1121.) Accordingly, this Court has jurisdiction over Plaintiffs' appeal under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUE

Did the district court correctly conclude that Ohio law, Ohio Revised Code § 3505.04, which provides for non-partisan ballots for judicial candidates in the general election, is constitutional under the First Amendment?

## STATEMENT OF THE CASE AND FACTS

### I. Plaintiffs' lawsuit and request for emergency relief.

Ohio has elected judges by nonpartisan ballot since 1851. *State ex rel. Weinberger v. Miller*, 87 Ohio St. 12, 99 N.E. 1078, 1086 (Ohio 1912). With respect to certain nonpartisan offices, including judicial candidates, Ohio Revised Code § 3505.04 provides that "[n]o name or designation of any political party nor any words, designations, or emblems descriptive of a candidate or his political affiliation, or indicative of the method by which such candidate was nominated or certified, shall be printed under or after any nonpartisan candidate's name which is printed on the ballot."

Seeking to overturn this longstanding practice, Plaintiffs-Appellants− a statewide labor organization, Ohio Council 8 American Federation of State, County and Municipal Employees ("AFSCME"); three judicial candidates; and the Ohio Democratic Party−filed suit. (Compl., Doc. 1, Page ID # 5-6.) In their complaint, Plaintiffs brought claims against Secretary of State Brunner, the Board of Elections of Cuyahoga County, the Board of Elections of Hamilton County,

each Justice of the Ohio Supreme Court, the Board of Commissioners on Grievances and Discipline, and the Chair, Vice-Chair, and Secretary of the Board of Commissioners of Grievances and Discipline.  (Compl., Doc. 1, Page ID # 1-3.) On the same date, Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction.  (Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 2, Page ID # 51-73.)

The Ohio Attorney General later intervened to defend the statute.

## II.    The district court denies emergency relief.

Following a hearing on August 13, 2010, during which the district court heard testimony from all of the named Plaintiffs and an expert in voting behavior, the court denied the Plaintiffs' motion for a preliminary injunction.  (Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 49, Page ID # 790-807.)  The court held that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims.  (*Id.* at Page ID # 798.)

The district court applied the familiar *Anderson-Burdick* balancing test to weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against the  "interests put forward by the State as justifications for the burden imposed by its rule." (*Id.* at Page ID # 795.)  The court found that Plaintiffs had not "put forth

3

evidence to demonstrate that prohibiting a political party designation next to judicial candidates' names on the general election ballot constitutes a 'severe' restriction on Plaintiffs' constitutional rights." (*Id.* at Page ID # 798.) Notably, the court recognized that neither Plaintiffs' associational nor expressive rights were burdened by Ohio Revised Code § 3505.04. (*Id.*) The judicial candidates were entitled to communicate their party affiliation "in person or in advertising." (*Id.*) Likewise, the judicial candidates' expressive rights were not burdened because "[b]allots serve primarily to elect candidates, not as forums for political expression." (*Id.* at Page ID # 799, citing to *Timmons*, 520 U.S. at 362-63.)

Because the court held that Plaintiffs were not subjected to "severe" restrictions on their free speech rights, the court applied the "less exacting" standard requiring a court to uphold a statute so long as the "burden is justified by a State's important regulatory interests." (*Id.* at Page ID # 798-799.) The district court denied Plaintiffs' motion, concluding that Plaintiffs "have not at this point shown a strong likelihood of success on the merits." (*Id.* at Page ID # 799.)

## III.   Plaintiffs appeal denial of motion for preliminary injunction and this Court affirms the district court's order.

On August 20, 2010, Plaintiffs appealed the district court's denial of their motion for a preliminary injunction to enjoin the enforcement of Ohio Revised Code § 3505.04. On the same day, this Court denied Plaintiffs' motion for an injunction because Plaintiffs had failed to first seek this relief in the district court.

4

*Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO v. Brunner*, No. 10-4006 (6th Cir. Aug. 20, 2010).

On February 16, 2012, following briefing on the district court's denial of Plaintiff's motion for a preliminary injunction to enjoin the enforcement of Ohio Revised Code § 3505.04, this Court affirmed the district court's decision. In so doing, this Court "agree[d] with the district court that Plaintiffs have not shown a likelihood of success on the merits of their argument that the prohibition of political party designations next to judicial candidates' names burdens their rights to association and free speech and is not outweighed by Ohio's interests." *Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO v. Brunner*, No. 10-4006 (6th Cir. Feb 16, 2012).

## IV.   The district court deems the statute constitutional and grants the Ohio Attorney General's Motion for Summary Judgment.

On July 15, 2011, the Ohio Attorney General filed a motion for summary judgment. (Doc. 59, Page ID #869.)   On June 3, 2014, the district court granted the Attorney General's summary judgment motion. (Doc. 88, Page ID #1087.)

As when it denied preliminary injunction relief, the District Court again applied the *Anderson-Burdick* balancing test. The court determined that Ohio Revised Code § 3505.04 did not severely restrict the speech and association rights of judicial candidates, parties, and voters. Relying on *Timmons v.Twin Cities Area New Party*, the court first found that the statute did not severely burden judicial

5

candidates' right to free expression.  520 U.S. 351, 363 (1997) (finding that an election ballot is not a vehicle for sending a private message).  (Doc. 88, Page ID # 1095.)    In particular, a state can "decide whether or not to allow candidates to use the general election ballot as a forum for expressing their party affiliation so long as the permission extends equally to all the candidates."  (*Id.* at Page ID # 1102.) The court then found that Ohio Revised Code § 3505.04 constitutes only a minimal restriction on judicial candidates' right to associate, as the statute does not prevent candidates from "associating with others for the purpose of advancing their political beliefs, from organizing their campaigns, or from obtaining access to the ballot."  (*Id.* at Page ID # 1104.)    Then, relying on factors the Sixth Circuit described in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006), the court found that Plaintiffs did not demonstrate a severe burden on voters' associational rights.  In support, the court noted that that "information about a judicial candidate's partisan affiliation is widely available to voters." (*Id.* at Page ID # 1106-1107.)    Next, again citing the similarities to the statute upheld in *Timmons*, 520 U.S. at 363, the court found that Ohio Revised Code § 3505.04 did not interfere with the Democratic Party's associational rights.  Specifically, the statute does not interfere with the Party's "right to nominate its preferred candidates for judge or the Party's right to get its candidate on the ballot."  (*Id.* at Page ID # 1109-1113.)    Finally, the court concluded that "the State's interest in

diminishing reliance on political parties in judicial selection is a legitimate one" that "outweighs Plaintiffs' interest in using the general election ballot as a forum for its expressive and associative activities." (*Id.* at Page ID # 1118.)

This appeal followed.

## SUMMARY OF THE ARGUMENT

Ohio has used non-partisan general elections to select its judges for more than 160 years. *Weinberger v. Miller*, 99 N.E. 1078, 1086 (Ohio 1912). This practice reflects the State's efforts to encourage a judicial candidate to "withdraw . . . from partisan politics," because "[i]n his official capacity [the judge] can serve no party, promulgate no partisan theories of government, [and] encourage no partisan economic measures." *Id.* Indeed, in rejecting a constitutional challenge to this law nearly a century ago, the Ohio Supreme Court underscored the legitimacy of the legislature's attempt "to take the judiciary out of partisan politics." *Id.* at 1086.

Plaintiffs do not dispute the importance of this objective. Rather, they disagree with the State's decisions regarding how best to accomplish that goal. Invoking the First Amendment, Plaintiffs seek to substitute their judgment for that of the State. But the Constitution permits no such result. Ohio's use of non-partisan ballots for judicial candidates does not burden Plaintiffs' expressive or associational rights. And, in any event, the State's interests outweigh any minimal

burden that may result from the reasonable regulation. Accordingly, the district court correctly ruled that the statute comports with the Constitution.

## ARGUMENT

### I.    Standard of Review

This Court reviews a district court's denial of a motion for summary judgment *de novo*. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 583 (6th Cir. 2006) citing *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996).

As Plaintiffs acknowledge, their constitutional challenge must be analyzed under the "flexible framework" developed by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The test requires that the court in the first instance "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson v. Celebrezze*, 460 U.S. at 789; *see also Burdick v. Takushi*, 504 U.S. 428, 432-34 (1992). Once the court examines the relative burden placed on the plaintiffs, the court "*then* must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* (emphasis added).

Under this standard, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation

8

burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Thus, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id*.; *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 350, 351 (1997); *Storer v. Brown*, 415 U.S. 724 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971).

In other words, this standard does not automatically invalidate even "substantial restriction[s] on the right to vote or to associate." *Storer*, 415 U.S. at 729-730. Further, the Court has emphasized the importance of state regulation of elections, stating that "... as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id*.

Here, the district court correctly concluded that the challenged ballot regulation did not severely burden the Plaintiffs' First Amendment expressive or associational rights.

## II.    Ohio's use of non-partisan ballots does not burden Plaintiffs' First Amendment rights.

### A.    The district court correctly held that Ohio's use of non-partisan ballots does not burden expressive rights.

The district court correctly rejected Plaintiffs' claim that judicial candidates have a First Amendment right to use the ballot to communicate their political affiliation to the electorate.

The Supreme Court has wholesale "rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message." *Nev.Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2351 (2011). The Court has made clear that "[b]allots serve primarily to elect candidates, not as forums for political expression." *Timmons*, 520 U.S. at 363. While judicial candidates have a right to "campaign…, endorse, and vote" in an election, they do not have "a right to use the ballot itself to send a particularized message." *Id.* And states have a strong interest in assuring that the purpose of an election ballot is not "transform[ed] ... from a means of choosing candidates to a billboard for political advertising." *Id.* at 365.

Plaintiffs' reliance on inapposite case law does not alter this conclusion. Plaintiffs cite to *Republican Party of Minn. v. White*, 536 U.S. 765 (2002), arguing that speech that communicates candidates' qualifications is a core First Amendment right. (Appellants' Brief, p. 32.) However, the Supreme Court's

10

decision in *White* addressed a restriction bearing no resemblance to the one at issue in this case.  In *White*, the Court considered a Minnesota regulation that prohibited judicial candidates "announc[ing] his or her views on disputed legal or political issues." *Republican Party v. White*, 536 U.S. at 768 (2002).   The challenged prohibition "extend[ed] to the candidate's mere statement of his current position [on an issue], even if he does not bind himself to maintain that position after election." *Id.*   Rather than addressing a state's permissible regulation of the content of a general election ballot, *White* turned on the constitutionality of a judicial canon that prohibited speech on the basis of content.  As a result of this content-based speech restriction, the Court determined that strict scrutiny was the appropriate standard to review the challenged statute.  Plaintiffs here do not and could not argue that the state's regulation of its general election ballots imposes a content-based restriction on judicial candidates' speech.

*Carey v. Wolnitzek*, 614 F.3d 189, 198 (6th Cir. 2010) similarly offers Plaintiffs no help.  As in *White*, the judicial canon in *Carey* did not regulate ballot content, but rather judicial candidates' speech regarding their qualifications.  As such, *Carey* does not control this Court's analysis of judicial candidates' right to use the ballot to communicate their party affiliation.

Plaintiffs reliance on the equal protection case *Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992) fares no better.  As the district court correctly held, *Rosen supports*

11

the constitutionality of Ohio's use of non-partisan ballots. In *Rosen*, a candidate who was unaffiliated with a political party challenged the statutory prohibition against having his party affiliation designated as "Independent" on the general election ballot. 970 F.2d at 171.

In stark contrast to the statute at issue here, *Rosen* involved a statute that expressly distinguished between two groups of candidates: the Democratic and Republican candidates who were permitted to bear a party affiliation on the ballot, and the Independent candidates who were prohibited from bearing a party affiliation. This disparate treatment, according to the Court, amounted to "'invidious discrimination, in violation of the Equal Protection Clause.'" *Id.* at 177 (quoting *Williams v. Rhodes*, 393 U.S. 23 (1968)).

Significantly, *Rosen* expressly stated that "[w]ith respect to the political designations of the candidates . . . on the ballot, a State could wash its hands of such business and leave it to the educational efforts of the candidates themselves, or their sponsors during the campaigns." *Id.* at 175. In other words, *Rosen* stands for the proposition that whereas a State may validly choose to withhold all reference to political party on the ballot, it cannot include partisan designations for some parties but not others.

*Rosen* thus *supports* rather than negates the constitutionality of Ohio's law. Ohio Revised Code § 3505.04 does not draw a distinction between the ballot

designations afforded to judicial candidates of any political stripe; rather, all judicial candidates are treated the same.

In short, the law is clear:  Plaintiffs are not entitled to use government speech in the form of a ballot to communicate their party affiliations.  And the district court correctly held that none of Plaintiffs' First Amendment expressive rights have been burdened by a statute that does so.

**B.    The district court correctly held that Ohio's use of non-partisan ballots for judicial candidates does not burden Plaintiffs' associational rights.**

Plaintiffs' contention that § 3505.04 impairs the associational rights of candidates, parties, and voters is equally unavailing.

**1.    Non-partisan ballots do not burden the party's associational rights.**

The district court correctly ruled that the use of non-partisan ballots does not impose an unconstitutional burden on the associational rights of the party.   "The First Amendment does not give political parties a right to have their nominees designated . . . on the ballot."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 n.7 (2008).  Rather, as this Court has acknowledged, "[r]estrictions that do not affect a political party's ability to perform its primary functions—organizing and developing, recruiting supporters, choosing a candidate, and voting for that candidate in a general election—have not been held to impose a

13

severe burden." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006).

As the testimony presented below confirms, Ohio's use of non-partisan ballots for judicial candidates during the general election does not interfere with the party's ability to perform its primary functions. The Ohio Democratic Party has a "robust staff" and a "robust infrastructure" to promote its chosen judicial candidates to electorate. (Transcript of August 13, 2010 Motion Hearing, Afternoon Session, Doc. 46, Page ID # 617.) The party provides donor lists to judicial candidates, it distributes literature and sample ballots promoting those candidates, and it knocks on doors urging voters to support those candidates. (*Id.* at Page ID # 624, 635.) Plaintiffs' expert confirmed the strength of the political parties to reach voters, particularly through new media outlines: "they're far stronger as organizations than they were in the 1990s." (*Id.* at Page ID # 739.) Nothing in Ohio Revised Code § 3505.04 inhibits the party's outreach initiatives.

The Ohio Democratic Party argues that because judicial candidates cannot communicate their political affiliation on the ballot, voters do not vote on the judicial portion of the election ballot. (Appellants' Brief, p. 29.) Plaintiffs' arguments presume that the Ohio Democratic Party has a First Amendment right to use the ballot as a pulpit from which to announce its nominees. (*See* Appellants' Brief, p. 26.) Not so.

The Supreme Court in *Timmons*, expressly rejected the argument that a political party "has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." 520 U.S. at 363.

In *Timmons*, the Court upheld a state "fusion" ban that prohibited a candidate from appearing on the ballot as the candidate of more than one party. *Id.* at 369. The plaintiff, a party that wanted to place a candidate on the ballot who was affiliated with another party, claimed that the ban burdened the party's right "to communicate its choice of nominees on the ballot on terms equal to those offered other parties, and the right of the party's supporters and other voters to receive that information." *Id.* at 362. In rejecting this argument, the Court explained that "[b]allots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363. More to the point, the Court explicitly acknowledged "[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Timmons*, 520 U.S. at 359.

*Timmons* relied on similar sentiments from earlier precedent. In *Burdick*, for example, the Court explained that "[a]ttributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." *Burdick,* 504 U.S. at 438. And, more recently, the Supreme

Court stated not only that the "First Amendment does not give political parties a right to have their nominees designated as such on the ballot," but also that "[p]arties do not gain such a right simply because the State affords candidates the opportunity to indicate their party preference on the ballot." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 n.7 (2008).

Citing to *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214 (1989), Plaintiffs argue that Ohio Revised Code § 3505.04 threatens the Ohio Democratic Party's ability to communicate with the electorate. (Appellants' Brief, p. 31.)  However, the challenged election regulation in *Eu* prohibited political parties from endorsing candidates and imposed restrictions on the internal composition and governance of political parties.  *Eu*, 489 U.S. at 214.  The Court held that such intrusive regulation of the internal structure and speech of political parties' burdened core political speech.  *Id.*

In stark contrast, the challenged statute here does not prevent a party from endorsing candidates or communicating with the electorate about those endorsements.  The Ohio Democratic Party continues to maintain its associational right to distance itself from an unpopular candidate and to endorse a preferred candidate.  The challenged statute does not affect the Ohio Democratic Party's right to "state[ ] whether a candidate adheres to the tenets of the party or whether

16

party officials believe that the candidate is qualified for the position sought." *Eu,* 489 U.S. at 223.

### 2.    Ohio's use of non-partisan ballots does not burden the associational rights of Ohio voters.

The district court correctly held that the nonpartisan judicial ballot does not burden the associational rights of the Ohio voters.  As the district court aptly noted, "election laws 'invariably impose some burden upon individual voters' and affect 'the individual's right to vote and his right to associate with others for political ends.'"  (Doc. 88, Page ID # 1105 (citing *Burdick* , 504 U.S. at 433).)  Thus, "[t]he issue, then, is whether the law unreasonably interferes with the right of voters to associate."  (*Id.*)

In this case, the answer to that question must be no.  As this Court has stressed, in evaluating the extent of the burden a regulation places on voters, a court must examine whether alternative means are available to exercise those rights.  *Libertarian Party of Ohio*, 462 F.3d at 587.  Ohio's use of non-partisan ballots for judicial nominees does not prevent voters from acquiring information about judicial candidates, including partisan affiliation.  As the district court noted, "information about a judicial candidate's partisan affiliation is widely available to voters."  (Doc. 88, Page ID # 1106.)  Indeed, such information is easily accessible from the county boards of elections and the Internet.  And even if those voters choose not to access the information, the Democratic Party will deliver it to them:

17

"we inundate them [with mailers] and we knock on their door and we call them and we slip notes in their kid's lunchbox at school if we have to." (Doc. 46, Page ID # 634-635.)   The Party aims to interact with each voter "seven times" before the general election.  (Doc. 46, Page ID # 634.)   Nothing in Ohio Revised Code § 3505.04 denies an interested voter access to candidate information, if he or she wants it. Nor does the statute have any impact whatsoever on voters' ability to "associate with their preferred party in any number of ways outside the voting booth." (Doc. 88, Page ID # 1105-1106.)

In light of the ample opportunities voters have to obtain information about candidates and associate as they choose, Ohio's narrow restriction on the use of political party designation on the general election ballot does not burden voters' associational rights under the First Amendment.

The cases Plaintiffs cite do not compel a different conclusion.

First, Plaintiffs rely heavily on the Supreme Court's decision in *Tashjian v. Republican Party of Conn.* for the proposition that "the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."   479 U.S. 208, 220 (1986). (Appellants' Brief, p. 30.)  But, eleven years after it decided *Tashjian*, the Supreme Court in *Timmons v. Twin Cities Area New Party* upheld Minnesota's statute that prohibited an individual from appearing on the ballot as the candidate of more than

18

one party.   520 U.S. 351, 362–63 (1997).  The Court held that Minnesota's laws do not severely burden associational rights, as the laws "do not restrict the ability of the [political party] and its members to endorse, support, or vote for anyone they like."  *Id.* at 363.

Plaintiffs' reliance on *Williams v. Rhodes*, 393 U.S. 23 (1968) is similarly misguided.  Plaintiffs cite *Williams* for the proposition that a state cannot severely burden "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."  *Id.* at 30.  In that case, Ohio election laws made it "virtually impossible for a new political party, even though it has hundreds of thousands of members, or an old party, which has a very small number of members, to be placed on the state ballot[.]"  *Id.*  No similar restriction exists in this case.  As Ohio Revised Code § 3505.04 does not prohibit any party from placing candidates on the ballot, the statute places no corresponding limitation on the ability of voters to effectively vote for their preferred candidate.  Accordingly, Plaintiffs have again failed to demonstrate a severe burden on voters' associational rights.

### 3.    Ohio's use of non-partisan ballots does not burden judicial candidates' associational rights.

Nor does Ohio's use of non-partisan ballots for judicial candidates during the general election violate any associational rights of the judicial candidates.  As already explained, the extent of the burden on the juridical candidates must be

19

determined in part by considering the availability of alternative means for exercising those rights. In this regard, the district court found that "[j]udicial candidates in Ohio have various alternative means to exercise their associational rights despite the ballot restrictions of O.R.C. 3505.04." (Doc. 88, Page ID # 1103.) The court summarized some of the opportunities available to judicial candidates in Ohio:

> The candidates are free to associate for the purpose of advancing their political beliefs by running in partisan primaries, attending political gatherings, participating in fund-raising activities sponsored by political parties, appearing on political parties' sample ballots, and saying that they are members of or are endorsed by a political party.

*Id*. Against this factual backdrop, the district court correctly concluded that the statute "does not prevent judicial candidates from associating with others for the purpose of advancing their political beliefs, from organizing their campaigns, or from obtaining access to the ballot." (Doc. 88, Page ID # 1104.) As such, it imposes, at most, a minimal restriction on judicial candidates' First Amendment rights to associate.

## III. The State's interests underlying the use of non-partisan ballots for judicial candidates outweighs any burden imposed by their use.

Even if plaintiffs could articulate some impairment of their expressive or associational rights (which they cannot and have not), Ohio Revised Code § 3505.04 passes constitutional muster. Because Ohio's use of non-partisan ballots for judicial candidates imposes no severe burden, the statute must be upheld if it

20

"serves an important regulatory interest of the State." *See Timmons*, 520 U.S. at 351; *see also Storer v. Brown*, 415 U.S. 724 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971); *Bullock v. Carter*, 405 U.S. 134 (1972).

Ohio's regulation easily passes muster under this test. Plaintiffs do not dispute the importance of the interests associated with using non-partisan ballots. Nor could they: this Court has confirmed that "[j]udicial elections differ from legislative elections," and that the State's "interest in diminishing reliance on political parties in judicial selection" is compelling. *Carey*, 614 F.3d at 201. Whereas "[l]egislative and executive officers are selected for the avowed purpose of promulgating definite principles and methods of government advanced by the respective parties," "a judge is not concerned with party platforms or party expediency." *Weinberger*, 99 N.E. at 1085.

Ohio's restriction on the use of political party designations serves this interest by removing the party designation at the time the voter makes his or her ultimate selection.

That Ohio law permits political party affiliation outside of the ballot does not undermine the importance of this critical step towards nonpartisanship. Some degree of partisanship is unavoidable in the judicial election process. As *Carey* demonstrates, judicial candidates have a protected First Amendment right to inform the electorate of their party affiliation. *Carey*, 614 F.3d at 203. Thus,

21

contrary to Plaintiffs' apparent belief that the State must either cleanse the entire judicial election process of partisanship or embrace it wholesale, no such all-or-nothing approach is necessary.  The State can accommodate both concerns—its compelling interest in reducing voters' reliance on political parties in judicial selection, see *Carey*, 614 F.3d at 201, and its decision to establish a formal role for political parties in nomination process, see *Timmons*, 520 U.S. at 367.

Ohio's decision to restrict the use of political party designations at the moment of election, while otherwise permitting judicial candidates to associate with the preferred party as they see fit, represents the State's careful balancing of these competing interests.  Plaintiffs' have offered no authority that would justify overturning this deeply rooted policy decision.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision upholding the constitutionality of Ohio Revised Code § 3505.04.

Respectfully submitted,

MICHAEL DeWINE
Ohio Attorney General

RENATA Y. STAFF (0086922)
RYAN L. RICHARDSON (0090382)
Assistant Attorneys General
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
T: 614-466-2872; F: 614-728-7592
renata.staff@ohioattorneygeneral.gov

ryan.richardson@ohioattorneygeneral.gov

*Counsel for Appellees-Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and 6 Cir. R. 32(a), the undersigned certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B).  As measured by the word count provided by Microsoft Word 2010, the pertinent parts of this brief contains <u>4846</u> words in Times New Roman 14 point font.

*s/ Renata Y. Staff*
Renata Y. Staff (0086922)
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2014, the foregoing Brief was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

*s/ Renata Y. Staff*
Renata Y. Staff (0086922)
Assistant Attorney General

## DESIGNATION OF DISTRICT COURT RECORD

Defendants-Appellees, pursuant to Sixth Circuit Rule 30(g), designate the

following filings from the district court's electronic record:

| Doc. No., | PageID# | Docket Text |
|---|---|---|
| 1 | 1-3, 5-6 | Complaint |
| 2 | 51-73 | Motion for Temporary Restraining Order and Preliminary Injunction |
| 46 | 617, 624,634, 635, 739 | Transcript of August 13, 2010 Motion Hearing, Afternoon Session |
| 49 | 790-807 | Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction |
| 59 | 869 | Motion for Summary Judgment |
| 88 | 1086, 1087-1119, 1095, 1102, 1103, 1104, 1105, 1106, 1109-1113, 1118 | Order granting Defendant Ohio Attorney General's Motion for Summary Judgment |
| 90 | 1121 | Notice of Appeal |

*s/ Renata Y. Staff*
Renata Y. Staff (0086922)
Assistant Attorney General

25